IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In Re:

DANIEL MANCL and CAROL MANCL,

                    Debtors

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL MANCL and CAROL MANCL,

                    Appellants,
                                        OPINION AND ORDER

      v.
                                         07-cv-0582-bbc

WILLIAM CHATTERTON,

                    Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Debtors Daniel and Carol Mancl appeal from the final order of the bankruptcy court denying confirmation of their chapter 13 plan for failure to provide sufficient payments to general unsecured creditors.  Jurisdiction over the appeal is based on 28 U.S.C. § 158(a)(1). I conclude that the sufficiency of payments to general unsecured creditors  is governed by 11 U.S.C. § 1325(b) and that the debtors' chapter 13 plan conforms to its requirements. Accordingly, the debtors' plan must be confirmed.

        I find the following facts material and undisputed for purposes of this appeal.

1

FACTS

On April 23, 2006, debtors filed a chapter 7 bankruptcy petition.  Bankruptcy trustee William Chatterton moved to dismiss the petition pursuant to 11 U.S.C. § 704(b)(2), contending that  debtors' income was high enough to trigger the presumption of abuse under § 707(b)(2).  In response, debtors moved to convert the case to a petition under chapter 13. On January 19, 2007, the bankruptcy court granted the motion and converted the case.

Debtors' five -year chapter 13 plan provides minimal payments to general unsecured creditors.  In accordance with 11 U.S.C. § 521(a)(1), debtors filed form B22C (Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income), which mandates a five-year plan term and yields a determination of no monthly disposable income.  Debtors also filed amended schedules I (Current Income of Individual Debtor[s]) and J (Current Expenditures of Individual Debtor[s]) which together indicated that debtors' actual estimated future monthly income would exceed estimated future monthly expenses, making monthly net income of $729 available for payment to general unsecured creditors.

The discrepancy between the projections in form B22C and schedules I and J is the result of variations in the calculation methods.   In debtors' circumstances, the most important distinction is that form B22C calculates disposable income by projecting forward debtors' actual income in the six months prior to filing, while schedule I sets forth debtors' best estimate of future income.  Because Daniel Mancl had suffered an injury and was on

2

temporary leave from his job before he and his wife filed their bankruptcy petition (a situation that precipitated the filing), debtors' income in the six months pre-petition was less than their anticipated post-petition income.  The trustee objected to confirmation of the plan, arguing that because actual projected income would permit significant payments to unsecured creditors, a plan proposing no payments to unsecured creditors was not proposed in good faith and did not satisfy §1323(b)(2).  After reviewing developing case law on the issue, the bankruptcy court agreed with the trustee that the plan should not be confirmed.

> As calculated by their Form B22C, the debtors' CMI [currrent monthly income] represents an economic aberration rather than either a historical norm or a realistic future forecast. . . .  In the recent case of In re Arsenault, 2007 WL 1956277 (Bankr. M.D. Fla.), the court concluded that the Form B22C should "be the basis for projected disposable income unless there is evidence that simply using the historic six-month snapshot does not form a reasonable basis for projecting income forward."  This Court believes this is a fair application of the good faith test to the calculation of current monthly income.

Memorandum Opinion, dkt #58, at 5.

OPINION

Debtors seek reversal of the bankruptcy court's order denying confirmation of their plan.  It is unclear whether the bankruptcy court denied confirmation because it believed the plan failed to satisfy the  requirements of § 1325(b) or because it judged the plan not to have been filed in good faith as required by § 1325(a)(3).  The trustee argues that confirmation was properly denied on either basis, while debtors contend that the plan is in full compliance

3

with § 1325(b) and is proposed in good faith.  It is undisputed that the relevant schedules and forms were accurately and correctly completed.  Accordingly, the appeal presents only issues of law, which are reviewed *de novo*.  <u>Mungo v. Taylor</u>, 355 F.3d 969, 974 (7th Cir. 2004).

11 U.S.C. §1325 governs confirmation of Chapter 13 plans.  It provides in relevant part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if–
>
>         \*   \*   \*
>
> (3) the plan has been proposed in good faith and not by any means forbidden by law;
>
>         \*   \*   \*
>
> (b)(1) if the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
>         \*   \*   \*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended– . . . .

11 U.S.C. § 101(10A) defines "current monthly income:"

> The term "current monthly income"--
>
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending

4

on–
 (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor filed the schedule of current income required by 521(a)(1)(B)(ii).

## A. Compliance with § 1325(b)

Section 1325(b)(1)(B) requires as a condition of confirmation that debtors pay all of their "projected disposable income" to unsecured creditors under the plan. The debtors' plan satisfies the unambiguous requirements of § 1325(b)(1)(B), notwithstanding its failure to provide significant payments to unsecured creditors, because debtors have no "projected disposable income" as that term is statutorily defined. Section 1325(b) defines disposable income as current monthly income. "Current monthly income," defined in greater detail at § 101(10A), means average monthly income in the six months pre-petition. When debtors calculated their disposable income in accordance with §101(10A), as prescribed in Part I of Form B22C, it was $0. The only reasonable interpretation of the phrase "projected disposable income" is properly calculated current monthly income projected forward for each month during the plan commitment period. As a result, even a plan that paid nothing to unsecured creditors would satisfy § 1325(b). A minority of the bankruptcy courts that have addressed the issue have reached the same interpretation and conclusion. E.g., In re Alexander, 344 B.R. 742, 748-50 (Bankr. E.D.N.C. 2006); In re Hanks, 362 B.R. 494, 498 (Bankr. D. Utah 2007).

5

Arguing for a different definition of "projected disposable income." the trustee relies on the majority rule, exemplified by In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006), and In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007), which treats the prescribed calculation of "disposable income" as merely a presumption, or starting point, for determining projected disposable income.   Bankruptcy courts taking this view have typically focused on the need to give meaning to the term "projected" or have placed great importance on their perception of congressional intent in enacting the Bankruptcy Abuse Prevention and Consumer Protection Act.   In re Hanks, 362 B.R. at 498-501 (collecting and summarizing various justifications for the majority position).

The language of the bankruptcy code, as amended by BAPCPA, cannot sustain the majority interpretation. Before the BAPCPA amendments took effect, calculating disposable income involved a flexible and value judgment-laden inquiry into the propriety of Schedules I and J. In contrast, the bright line test of the amended § 1325(b) is a purely mechanical endeavor admitting of no discretion.    Section 1325(b)(2) says that "disposable income" means current monthly income "for purposes of this subsection."   The term disposable income is used only once in the subsection, in the phrase "projected disposable income."  To adopt the majority view, one must assume that Congress created the precise and objective current monthly income definition of § 101(10A), mandated that bankruptcy courts apply it to the § 1325(b) test, and then added the term "projected" to empower bankruptcy courts to ignore the § 101(10A) definition, substituting their own sense of fairness by applying the

6

former process of analyzing and comparing schedules I and J.  Given the precision and detail of the statute, such an interpretation is untenable.

Moreover, requiring strict adherence to the statute is entirely consistent with congressional objectives in changing the law.  Replacing the previous nuanced and discretionary computation of disposable income with the uncompromising six-month average income determination deprived bankruptcy courts of discretion and made a certain number of harsh results inevitable for both debtors and creditors.  It also enhanced consistency and predictability and limited the opportunities for manipulation of the process.  There is no reason to believe that Congress did not anticipate and intend both of these effects.  To the contrary, it is very likely that Congress anticipated the precise circumstances of this case, in which a pre-petition decline in income precipitates a bankruptcy filing, leaving debtors in a position of having to pay less than under the former regime.   Marianne B. Culhane & Michaela M. White, Catching Can-Pay Debtors: Is the Means Test the Only Way, 13 Am. Bankr. Inst. L. Rev. 665, 682 (2005)(citing legislative history that Chapter 13 trustees informed Congress that BAPCPA would have the effect of reducing required payments for some high income debtors).  Although it is understandable that bankruptcy courts might resist strict adherence to the code's new requirements in favor of retaining their former discretionary powers, it is apparent from the language and history of the BAPCPA  that adherence to objectively defined standards and reduced judicial discretion is what Congress intended.

The clear meaning and intent of § 1325(b) is to establish objective and defined methods for calculating both income and expenses to be used in setting minimum payments to unsecured Chapter 13 creditors.  One consequence of the enhanced certainty of the new statutory scheme is that some debtors' actual income and expenses vary from the standard.  That consequence is entirely predictable (in fact, inevitable) and is certainly not a justification for ignoring the detailed parameters of § 1325(b).  The plan proposed by these debtors complies with § 1325(b).

B. <u>Good Faith Requirement</u>

The bankruptcy trustee correctly points out that the § 1325(a)(3) requirement that "the plan has been proposed in good faith" is independent of the requirements of § 1325(b). He argues that even if the requirements of § 1325(b) do not compel payments to unsecured creditors, the plan is not proposed in good faith and confirmation should be denied because the debtors' actual disposable income would permit such payments.  Some bankruptcy courts have accepted this position.  <u>E.g.</u>, <u>In re Edmunds</u>, 350 B.R. 636, 648 (Bankr. D.S.C. 2006). However, the prevailing rule of law since the initial adoption of § 1325(b) in 1984 is that the sufficiency of resources committed to unsecured creditors is governed by that more specific provision and is no longer a consideration in good faith analysis under §1325(a)(3). <u>Matter of Smith</u>, 848 F.2d 813, 820 (7th Cir. 1988); <u>In re Barr</u>, 341 B.R. 181, 183-185(Bankr. M.D.N.C. 2006)(collecting cases and history); <u>In re Alexander</u> 344 B.R. at 752;

8

8 <u>Collier on Bankruptcy</u>, ¶ 1325.08[1] (Alan N. Resnick and Henry J. Sommer eds. 15th ed.,

2007).  The 2005 BAPCPA amendments support this conclusion:

> Instead of simply looking at the debtor's actual income and expenses, these amendments in many cases attempt to create a bright line test to determine whether a debtor's plan is committing all disposable income.  By creating a bright line test, congress even more clearly indicated that it intended section 1325(b), rather than the good faith test, to be the measure of whether the debtor was committing sufficient income to the plan.

<u>Id.</u> at ¶ 1325.08[2].

From a broader perspective, it seems appropriate to leave questions concerning

sufficiency of assets devoted to the plan to the scheme devised by Congress for that purpose.

Considering the sufficiency of the assets committed to the plan in the context of good faith

analysis would permit circumvention of the carefully crafted objective test established by the

amendments.  The inevitable result would be to undermine the uniformity and predictability

goals of the bright line test.

It is conceivable that debtors might fail the good faith test if they engaged in pre-

petition conduct for the purpose of manipulating the § 101(10A) calculation.  For example,

had debtors intentionally taken leaves from work to artificially depress their earnings in the

six-month pre-petition period, thereby manipulating the provisions to thwart creditors, the

plan may not have been filed in good faith.  <u>In re Smith</u>, 286 F.3d 461 (7th Cir. 2002)(pre-

petition conduct may be the basis for finding lack of good faith).  But it is undisputed that

the income of the debtors in this case was reduced in the pre-petition period because of

unplanned misfortune.  Debtors who suffer an unplanned loss of income that leads them to bankruptcy and who propose a plan committing assets to unsecured creditors in compliance with § 1325(b) have acted in good faith in proposing the plan insofar as the sufficiency of payment to unsecured creditors is concerned.

From the undisputed evidence in the record, I conclude that the plan fully complied with § 1325(b) and was proposed by the debtors in good faith.

ORDER

IT IS ORDERED that the decision of the bankruptcy court denying confirmation of the debtors' Chapter 13 plan is REVERSED and the matter is REMANDED for confirmation of the plan.

Entered this 12th day of February, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

10